Case No. 06-2306

_____
_____


FOREST GUARDIANS and CARSON FOREST WATCH,

Plaintiffs-Appellants,

v.

UNITED STATES FOREST SERVICE,

Defendant-Appellee.

_____


**PLAINTIFFS-APPELLANTS' PETITION
FOR PANEL OR <u>EN</u> <u>BANC</u> REHEARING**

(Panel decision attached to e-filed Petition in Native PDF)

_____

Steven Sugarman
1210 Luisa Street – Suite 2
Santa Fe, New Mexico 87505
(505) 672-5082

Attorney for Plaintiffs-Appellants

_____
_____

# TABLE OF CONTENTS

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Statement as Grounds for Petition for Rehearing . . . . . . . . . . . . . . . . . . . . . 1

      A.    The case involves a question of exceptional importance . . . . . . . . . . 1

      B.    The majority's decision conflicts with decisions of the
            United States Supreme Court and the Tenth Circuit Court
            of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  Factual Background and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.   Certificate of Service and Digital Submission . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## Cases

American Petroleum Institute v. E.P.A.
540 F.2d 1203 (10th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Burlington Truck Lines, Inc. v. United States
 83 S.Ct. 239 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cherokee Nation of Oklahoma v. Norton
389 F.3d 1074(10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Colorado Wild, Heartwood v. U.S. Forest Service
435 F.3d 1204 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ecology Center v. U.S. Forest Service
451 F.3d 1183 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

Hackett v. Barnhart
475 F.3d 1166 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Olenhouse v. Commodity Credit Corp.
42 F.3d 1560 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Securities and Exchange Commission v. Chenery Corp.
63 S.Ct. 454 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Securities and Exchange Commission v. Chenery Corp.
67 S.Ct. 1575 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

State of New Mexico ex rel. Richardson v. Bureau of Land Management
565 F.3d 683 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Utah Environmental Congress v. Bosworth ("UEC1")
372 F.2d 1219 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Utah Environmental Congress v. Bosworth ("UEC2 superceded")
421 F.3d 1105 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Utah Environmental Congress v. Bosworth ("UEC2")
439 F.3d 1184 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Utah Environmental Congress v. Bosworth ("UEC3")
443 F.3d 732 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Utah Environmental Congress v. Richmond ("Richmond")
483 F.3d 1127 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Utah Environmental Congress v. Troyer ("Troyer")
479 F.3d 1269 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Utahns for Better Transportation v. U.S. Department of Transportation
305 F.3d 1152 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Women Involved in Farm Economics v. U.S. Department of Agriculture
876 F.2d 994 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes, Regulations, and Rules**

16 U.S.C. §1600 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16 U.S.C. §1604(g)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

36 C.F.R. Part 219 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

36 C.F.R. §219.19(a)(6) (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

69 Fed.Reg. 58,055 (Sept. 29, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**<u>Other Authorities</u>**

Kevin M. Stack, <u>The Constitutional Foundations of Chenery</u>
116 Yale L.J. 952 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# I. **Introduction**

Plaintiffs-Appellants Forest Guardians and Carson Forest Watch ("Forest Guardians") respectfully petition the Court for panel or en banc rehearing in this case which challenges a decision of Defendant-Appellee United States Forest Service ("USFS") to authorize the Agua-Caballos timber sale project ("A-C project").[1] Specifically, Forest Guardians seeks rehearing of Section II.B, in which "[t]he majority holds that Forest Guardians may not object to the agency's change of rationale [for the challenged decision] because it did not raise this argument before the agency during the administrative appeal process."  Dissent at 1132.

## II. **Statement as to Grounds for Petition for Rehearing**

Pursuant to Federal Rules of Appellate Procedure 35(b) and 40(a)(2), Forest Guardians respectfully asserts that rehearing is appropriate for two important reasons.

A. The case involves a question of exceptional importance

First, this case presents a question of exceptional importance.  The majority decision erodes a bedrock principle that lies at the foundation of our nation's administrative law: the rule that federal courts which are called upon to review agency action "must judge the propriety of such action solely by the grounds invoked

---

[1]    The split decision in this case is reported in the West system at 579 F.3d 1114 (10th Cir. 2009), and throughout this Petition Forest Guardians will variously cite to the majority's decision, 579 F.3d at 1114-31, and to the dissent, 579 F.3d at 1131-1134 (McConnell, J., dissenting with respect to Section II.B).

by the agency." <u>Securities and Exchange Commission v. Chenery Corp.</u>, 67 S.Ct. 1575, 1577 (1947). Here, in clear violation of the <u>Chenery</u> rule, the majority impermissibly affirms the USFS's decision to authorize the A-C project despite the fact that the USFS "changed its rationale [for the challenged decision] when the project was challenged in court," and despite the fact that there is no evidence in the administrative record showing that the USFS ever considered the rationale for the decision proffered by agency counsel during litigation. Dissent at 1131-32.

Forest Guardians raised the <u>Chenery</u> issue in district court as soon as it was apparent that the USFS would offer a rationale for the project decision in litigation that it had never once articulated during the course of administrative proceedings. Dissent at 1132. Nonetheless, the majority illogically holds that Forest Guardians cannot raise the <u>Chenery</u> issue because it did not first raise the issue during its administrative appeals of the A-C project decision. The dissenting opinion explains the illogic of applying administrative exhaustion principles to <u>Chenery</u> claims:

> It is not logically possible for a <u>Chenery</u> claim to arise during the administrative process, because at that stage the shift in rationale has not yet occurred. Only when the agency offers a new rationale in district court or the district court affirms on the basis of a new rationale does the <u>Chenery</u> problem arise.

Dissent at 1132. The majority's illogical "grafting" of administrative exhaustion requirements onto <u>Chenery</u> claims constructs a <u>de facto</u> bar to plaintiffs who are in

a position to raise such claims, and effectively insulates agency decisions from claims that an agency impermissibly changed its rationale for a challenged decision during the course of litigation.

The dissent aptly notes that the majority is "removing the teeth from <u>Chenery</u> by using exhaustion to prevent the plaintiffs from calling them on it." Dissent at 1133. The majority's unprecedented departure from the <u>Chenery</u> rule will inevitably lead to a serious erosion of the well-settled procedures governing judicial review of administrative action. If agencies are permitted to change their rationale for a challenged decision during the course of litigation with immunity from <u>Chenery</u> challenges, as the majority holds and approves, then there will be no administrative record to assist the courts in their review of decisions and no reasoned justification for decision-making to which a reviewing court can defer. In short, the majority's decision will wreak havoc on this Court's – and on subordinate district courts' – administration of administrative law, and in particular on the well-settled procedures for judicial review of agency decisions set forth by the Supreme Court in <u>Chenery</u> and its progeny and reaffirmed by this Court in <u>Olenhouse v. Commodity Credit Corp.</u>, 42 F.3d 1560 (10th Cir. 1994). Moreover, the majority's illogical recognition of an exhaustion bar to <u>Chenery</u> claims taints the integrity of agency decision-making and "propel[s] the court into the domain which Congress has set aside exclusively for the

administrative agency.  <u>Chenery</u>, 67 S.Ct. at 1577.

>    B.    <u>The majority's decision conflicts with decisions of the United States Supreme Court and the Tenth Circuit Court of Appeals</u>

Second, the majority's decision in this case conflicts with "touchstone" administrative law decisions rendered by the United States Supreme Court and this Court.  As noted above, the majority's decision in this case conflicts with what the Supreme Court calls a "simple but fundamental rule of administrative law": the rule that a reviewing court may affirm an agency's decision only upon the grounds invoked by the agency when it made the challenged decision.  <u>Chenery</u>, 67 S.Ct. at 1577.  This bedrock principle of administrative law now constitutes the foundation of federal administrative law jurisprudence, and is deeply entrenched in the Tenth Circuit and all federal courts.[2]  Indeed, in a trio of cases which present factual

---

[2]    <u>See</u> <u>for</u> <u>example</u> <u>State of New Mexico ex rel. Richardson v. Bureau of Land Management</u>, 565 F.3d 683, 704 (10th Cir. 2009) (in reviewing the propriety of challenged agency decisions "we consider only the agency's reasoning at the time of decisionmaking, excluding post-hoc rationalization concocted by counsel in briefs or argument"), <u>Hackett v. Barnhart</u>, 475 F.3d 1166, 1174-75 (10th Cir. 2007) (<u>Chenery</u> violated when agency "came up with entirely new legal theories" in the course of litigation to support a challenged decision), <u>Colorado Wild, Heartwood v. U.S. Forest Service</u>, 435 F.3d 1204, 1213 (10th Cir. 2006) ("an agency's action must be upheld, if at all, on the basis articulated by the agency itself"), <u>Cherokee Nation of Oklahoma v. Norton</u>, 389 F.3d 1074, 1078 (10th Cir. 2004) ("[a]gency action must be upheld, if at all, on the basis the agency articulated"), <u>Utahns for Better Transportation v. U.S. Department of Transportation</u>, 305 F.3d 1152, 1165 (10th Cir. 2002) ("[w]e can only affirm agency action, if at all, on grounds articulated by the agency itself"), <u>Olenhouse</u>, 42 F.3d at 1575 ("an agency's action must be upheld, if at all, on the basis

circumstances almost identical to those presented by this case – namely, the USFS changed its rationale for challenged timber sale decisions after litigation was commenced – this Court found that the <u>Chenery</u> rule required reversal of the USFS decisions. <u>See</u> <u>Utah Environmental Congress v. Richmond</u>, 483 F.3d 1127, 1136 (10th Cir. 2007) ("we may not affirm an agency decision based on reasoning that the agency itself never considered"), <u>Utah Environmental Congress v. Troyer</u>, 479 F.3d 1269, 1287 (10th Cir. 2007) ("it is necessary to vacate" the challenged timber sale decision because "it is obvious from the record on appeal" that the USFS failed to apply the appropriate legal standard during the administrative process), <u>Ecology Center v. U.S. Forest Service</u>, 451 F.3d 1183, 1195 (10th Cir. 2006) ("we may not properly affirm an administrative action on grounds different from those considered by the agency").

Notably, in all three of these cases where this Court reversed USFS timber sale decisions on <u>Chenery</u> grounds, the <u>Chenery</u> issue was not raised by the plaintiffs during the course of litigation but was nonetheless raised by this Court <u>sua sponte</u>.[3]

---

articulated by the agency itself"), <u>American Petroleum Institute v. E.P.A.</u>, 540 F.2d 1203, 1029 (10th Cir. 1976) ("[t]he grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record").

[3]     In this one significant respect, the factual circumstances of <u>Ecology Center</u>, <u>Troyer</u>, and <u>Richmond</u> and the factual circumstances of the instant case diverge: "The only difference between <u>Troyer</u> and the present case is that this time, after the Forest Service changed its rationale, the plaintiff raised the <u>Chenery</u>

As the dissenting opinion explains, the Court's decisions in this trio of cases established a rule

> that in a conflict between the principle that we will not reverse a district court based on an argument not made by the plaintiff and the principle that we may not affirm an agency decision based on reasoning that the agency itself never considered, *Troyer* settled the issue in the favor or the latter.

Dissent at 1134, <u>see also</u> <u>Richmond</u>, 483 F.3d at 1136 (the <u>Chenery</u> issue "is a legal matter . . . to be addressed by this Court" <u>sua</u> <u>sponte</u> if not raised by the plaintiffs).

## III.  <u>Factual Background and Procedural History</u>

The USFS's administration of national forest lands is governed by the National Forest Management Act ("NFMA").  16 U.S.C. §1600 <u>et</u> <u>seq.</u>  NFMA imposes various management obligations on the USFS, including the duty to "provide for diversity of plant and animal communities."  16 U.S.C. §1604(g)(3)(B).  To implement its statutory obligations under NFMA – including, but not limited, its biodiversity protection obligation – the USFS promulgated regulations in 1982.  36 C.F.R. Part 219.

The 1982 Part 219 regulations required the USFS to designate Management Indicator Species ("MIS") – which act like "canaries in a coal mine" – and to monitor

---

issue.  Apparently, that was its mistake.  If Forest Guardians had never raised the claim, the Forest Service would not have had occasion to argue exhaustion, and the court would have been under an obligation to raise the <u>Chenery</u> issue <u>sua</u> <u>sponte</u>, as we did in <u>Troyer</u> and <u>Richmond</u>."  Dissent at 1134.

population trends of MIS in proposed project areas so that the agency could track the impacts of its management decisions on MIS populations and, by proxy, on the populations of other species that use the same habitats as MIS. 36 C.F.R. §219.19(a)(6) (1982). In a watershed decision issued on June 23, 2004, this Court held that "[p]lainly the [1982 NFMA] regulations require that the Forest Service monitor population trends of the MIS" in a proposed project area – using "actual, quantitative data" – prior to authorizing the project.[4] <u>Utah Environmental Congress v. Bosworth</u> ("<u>UEC1</u>"), 372 F.2d 1219, 1226 (10th Cir. 2004). This decision set a very high bar for the USFS to justify its project decisions in court.

Even though the 1982 Part 219 regulations were superceded in November of 2000, the USFS continued to apply the 1982 regulations throughout the planning, decision-making, and appeals process for the A-C timber sale.[5] In a memorandum

---

[4]    This decision represented a significant setback for the USFS, as the agency had previously taken the position that the 1982 NFMA regulations' MIS survey requirements applied only at the programmatic forest-wide planning level, and <u>not</u> at the site-specific project level where programmatic Forest Plans are implemented. Dissent at 1132 n. 1.

[5]    "As late as 2004, the Forest Service was still applying the 1982 rules." Dissent at 1132 n. 1. In the years immediately following issuance of the 2000 NFMA rules, the USFS promulgated "a bewildering series of transitional rules" as to if, how, and when the 2000 rules should be applied. <u>Utah Environmental Congress v. Bosworth</u> ("<u>UEC2</u>"), 439 F.3d 1184, 1189 (10th Cir. 2006). It was not until the USFS issued an "interpretive rule" on September 29, 2004 that the agency took the position that the 2000 rule should be applied to all USFS project decisions made after the 2000 rule was promulgated in November of

brief in the district court, the USFS candidly acknowledges that it "looked to and applied" the 1982 NFMA regulations throughout the administrative process for the A-C project. USFS's Response to Motion for Preliminary Injunction [Docket #26] at 10. Likewise, the district court found in this case that "the USFS applied the 1982 regulations" throughout the planning and the decision-making processes for the A-C project. Order [Docket #71] at 36, <u>see</u> <u>also</u> Dissent at 1131 ("the Forest Service approved the A-C project under the 1982 rules, and supported the project throughout the administrative appeals process on the basis of those rules. It did the same when Forest Guardians challenged the decision in federal court and requested a preliminary injunction").

---

2000. 69 Fed.Reg. 58,055. The dissent theorizes, as does Forest Guardians, that the USFS's issuance of the "interpretive rule" was triggered by this Court's exacting interpretation of the 1982 MIS requirements set forth in the <u>UEC1</u> decision of June 23, 2004. Dissent at 1132 n. 1. Taking the USFS's lead, this Court also applied the 1982 Part 219 regulations in its review of USFS project decisions made after promulgation of the 2000 regulations. <u>See</u> <u>UEC1</u>, 372 F.3d at 1221 n. 1, <u>Utah Environmental Congress v. Bosworth</u> ("<u>UEC2 superceded</u>"), 421 F.3d 1105, 1111 (10th Cir. 2005) (in <u>UEC1</u> "we treated the 1982 rule, rather than the [2000 rule], as 'the regulation in effect at the time of the disputed Forest Service decisons' made in December of 2000" after the 2000 rule was promulated). Even after promulgation of the "interpretive rule" on September 29, 2004, and until the April 6, 2006 decision in <u>Utah Environmental Congress v. Bosworth</u> ("<u>UEC3</u>"), 443 F.3d 732 (10th Cir. 2006), this Court continued to apply the 1982 rules in its review of USFS project decisions – even those that post-dated promulgation of the 2000 rules – if the agency applied the 1982 rules during project planning and decision-making. Dissent 1132 at n. 1.

The USFS first issued a decision for the A-C project on May 9, 2002, and Forest Guardians filed a successful administrative appeal of the decision in which it argued that the USFS had failed to comply with the MIS requirements of the 1982 regulations.  Joint Deferred Appendix ("JDA") 165-93.  After remand and further analysis, the USFS issued the second (and final) decision for the A-C project on April 13, 2004.  JDA 286.  Forest Guardians' second administrative appeal of the decision – which was based on the argument that the USFS had still failed to comply with the mandatory MIS requirements of the 1982 regulations – was rejected by the USFS. JDA 305-23.

Once this matter was in litigation, the district court agreed with Forest Guardians' factual contentions regarding the USFS's failure to comply with the MIS requirements of the 1982 regulations.   At the February 10, 2006 merits hearing, the district court stated: "I don't think the Forest Service can really make any argument that they've met" the MIS requirements of the 1982 regulations.  Transcript excerpted at JDA 302.

However, the district court never ruled on the merits of the 1982 MIS requirement issue because USFS counsel changed the rationale for the A-C decision during litigation, and began to argue for the first time that the propriety of the decision should <u>not</u> be adjudged by the standards of the 1982 regulations, but rather

by the standards of the 2000 regulations. Astonishingly, USFS counsel proffered this new rationale for the A-C project in clear violation of the Chenery rule: the USFS had applied the 1982 regulations consistently during the administrative process for the project and there is no evidence whatsoever in the administrative record for the project that the USFS ever considered or applied the 2000 regulations during project planning and decision-making.[6] In decisions that do not bode well for the administration of administrative law in this Court, the district court and the majority on appeal have held that Forest Guardians cannot raise the Chenery issue in litigation because it was not raised in its administrative appeals of the A-C decision.

## IV. **Argument**

The Chenery rule is a bedrock principle that lies at the foundation of our nation's administrative law jurisprudence. Fealty to the Chenery rule assures the integrity of agency decisions and makes it possible for courts to perform judicial review of agency actions. "The Chenery principle operates both to bolster the

---

[6]     Indeed, the district court stated at the July 20, 2006 hearing that "there's nothing in the record" showing that the USFS considered or applied the 2000 regulations during the planning and decision-making processes for the A-C project, that "all the compliance was done consistent with the '82 rules," and that the "Forest Service hasn't been arguing heretofore that it applied the best available science standard" of the 2000 Part 219 regulations. Transcript excerpted at JDA 304, 306, see also Dissent at 1132 n. 2 (noting that the district court found that "the Forest Service 'does not point in record to where it used best available science standard'").

political accountability of the agency's action and to prevent arbitrariness in the agency's exercise of its discretion." Kevin M. Stack, <u>The Constitutional Foundations of Chenery</u>, 116 Yale L.J. 952, 958 (2007).

Insofar as the integrity of agency decision-making is concerned, application of the <u>Chenery</u> rule assures that agency decisions are based on the deliberate and well-reasoned consideration of relevant evidence by decision makers with requisite technical expertise. Departure from the <u>Chenery</u> rule, as in this case, is associated with the risk that infirm rationales that are proffered in support of agency decisions by agency counsel during the course of litigation – many of which are scientific or technical in nature – will be adopted and endorsed by courts which lack the competence to assess the rationale in the first instance:

> [<u>Chenery</u>] ordinarily prevents agency counsel from proffering alternative theories – not explicitly embraced by a department or agency head – to support a challenged regulation; to permit that risks <u>judicial</u> "intru[sion] upon the domain which Congress has exclusively entrusted to an administrative agency." By adopting a specific argument in support of agency action offered by counsel in the litigating process – but not relied on by the agency – the courts might actually restrict improperly the agency's future freedom of action to make policy under a particular statute. And in the swirl of litigation it is sometimes not entirely clear whether an argument that appeals to a court was actually presented in quite the fashion the court perceives.

<u>Women Involved in Farm Economics v. U.S. Department of Agriculture</u>, 876 F.2d 994, 998-99 (D.C. Cir. 1989). To prevent erosion of accountability and integrity in

the agency decision-making process, this Court (like all federal courts) holds that when agency counsel proffer a new rationale in litigation in support of a challenged agency decision "a remand is appropriate so that the agency itself can have the first chance to apply its own standards." Ecology Center, 451 F.3d at 1194.

Insofar as the Chenery rule's critical function in judicial review is concerned, application of the rule assures that judicial review of agency decisions can be based on administrative records that adequately explain the agencies' reasons and rationales for their decisions. "[T]he courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review." Securities and Exchange Commission v. Chenery Corp., 63 S.Ct. 454, 462 (1943). Erecting a de facto barrier to the raising of legitimate Chenery claims, as the majority does when it holds that Chenery issues cannot be raised unless they are first exhausted, runs the risk of systemic breakdown in long-standing procedures governing judicial review of agency action. "For the courts to substitute their or counsel's discretion for that of the [agency] is incompatible with the orderly functioning of the process of judicial review." Burlington Truck Lines, Inc. v. United States, 83 S.Ct. 239, 246 (1962).

Indeed, the trajectory of this case clearly illustrates the mischief that departure from the Chenery rule invites. In this case, USFS counsel developed an entirely new rationale for the A-C project decision when it became apparent that the project would

not withstand judicial review if adjudged by the standards of the 1982 regulations which it had used throughout the planning and decision-making process. Counsel's new rationale – which was not fully articulated until this case was on appeal to this Court – was based on a novel and unsupported (and, Forest Guardians contends, absurd and biologically indefensible) technical argument that has never been raised or considered by the agency outside of litigation.[7]

Nonetheless, the majority illogically affirms the USFS's decision because it finds that Forest Guardians may not raise the Chenery violation since it did not raise the issue during administrative appeals. The dissent explains the serious practical consequences of the majority's decision:

> Because it is logically impossible for parties to raise a Chenery issue during the administrative process, the majority's holding effectively gives a green light to Chenery violations, so long as agency lawyers are quick-witted enough to plead lack of exhaustion. Upon discovery that the agency's rationale will not be held up in court, lawyers offer a new one. When the plaintiff raises a Chenery objection, the agency lawyers cry, "no exhaustion." It should work every time.

Dissent at 1133.

---

[7]    In a nutshell, USFS counsel argued for the first time on appeal that the USFS's management guidelines for the northern goshawk – an avian "habitat generalist" with a home range of approximately 6,000 acres – constitute the "best available science" concerning management of the Abert's squirrel – a mammalian "habitat specialist" with a home range of about 6 acres. See Forest Guardians' August 4, 2008 Supplemental Brief. The "best available science" standard is the standard associated with the 2000 NFMA regulations.

In this case, the majority attempts to "dodge" the <u>Chenery</u> issue on exhaustion grounds by erroneously finding that "Forest Guardians' appeal does not center on the district court's failure to apply <u>Chenery</u>." Majority at 1124. Respectfully, Forest Guardians submits that this is clearly incorrect. Forest Guardians consistently argued in this case that the A-C decision could not be affirmed on <u>Chenery</u> grounds:

> In a case like this one – where the administrative record is totally devoid of any reference to the governing standard – the question presented to this Court is a pure question of law: can the decision be affirmed on the basis of grounds not articulated by the agency in the administrative record? The clear answer in this Circuit, as in all the federal courts, is "no."

Forest Guardians' Opening Brief at 48-49, <u>see also id.</u> at 46 (cataloguing seven occasions upon which Forest Guardians raised the <u>Chenery</u> issue in the district court).

Presumably aware of the tenuous nature of its exhaustion holding, on factual as well as legal grounds, the majority also offers a policy rationale for its unprecedented decision. The majority claims that the application of exhaustion requirements to <u>Chenery</u> claims will result in judicial efficiency:

> The exhaustion doctrine, however, is independently operational and may in fact eliminate the need for further inquiry into a possible <u>Chenery</u> problem. For instance, it seems quite clear as a matter of logic that if the agency rationale that is alleged to be late-blooming as contemplated by <u>Chenery</u> relates to a claim that a plaintiff has not exhausted and the agency asserts exhaustion as a defense, then this would be at least one situation where application of the exhaustion doctrine might well negate the need to reach the possible <u>Chenery</u> problem. That is the situation before us here.

Majority at 1125-26.  Respectfully, the majority fails to apprehend the harrowing policy and jurisprudential consequences of its holding that Chenery claims are subject to exhaustion requirements.  The false judicial economy achieved by the majority's decision to allow agencies to change the rationale for their decisions during the course of litigation with immunity from a Chenery challenge comes at a disastrously high cost: abandonment of well-settled rules of administrative law, disarray in the Tenth Circuit's administrative law jurisprudence and administration, and loss of integrity and accountability in agency decision-making.[8]

## V.  Conclusion

The application of exhaustion requirements to Chenery claims eviscerates the Chenery rule, and will lead to disarray in the administration of administrative law in the Tenth Circuit.  To preserve and protect the orderly functioning of administrative law in the Tenth Circuit, rehearing should be granted and Section II.B of the majority decision should be amended to adopt the reasoning, rationale, and conclusion of the dissent.

---

[8]        Of course, the "immunity" occurs because the Chenery issue "simply [does] not arise until" an agency decision is challenged in court, at which time it will necessarily be too late to raise the Chenery issue in administrative appeals. Dissent at 1133.  In this sense, the majority imposes a procedural requirement on Chenery claims which plaintiffs can never hope to meet.  Thus, agency decisions are "immunized" from legitimate Chenery challenges like the one raised by Forest Guardians in this case.

Respectfully submitted,


_____/s/_____
Steven Sugarman
1210 Luisa Street – Suite 2
Santa Fe, New Mexico 87505
(505) 672-5082

Attorney for Plaintiffs-Appellants

## Certificate of Service and Digital Submission

  I certify that a copy of the foregoing Petition for Panel or <u>En</u> <u>Banc</u> Rehearing has been served on David Shilton, the only other counsel appearing in this case, through the Tenth Circuit ECF system on August 26. 2009.

  I further certify that all required redactions have been made, that this document is an exact copy of the hard-copy document to be filed with the Court, and that the digital document has been scanned by Symantec Norton Internet Security and is free of viruses.


        _____/s/_____

        Steven Sugarman